1
2
3
4
5
6
7

8                         UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEDONNE MARCEL DRAKE,                    No.  2:12-cv-1499 DAD TLN P

12                 Petitioner,

13        v.

14   THE PEOPLE OF THE STATE OF               FINDINGS AND RECOMMENDATIONS
     CALIFORNIA,
15
                   Respondent.
16

17   _____

18        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.[1]  Petitioner challenges a judgment of conviction entered against

20   him on August 20, 2010 in the San Joaquin County Superior Court on charges of assault by

21   means of force likely to produce great bodily injury.  He seeks federal habeas relief on the

22   following grounds:  (1) the trial court violated his right to due process when it admitted

23   prejudicial testimony against petitioner at trial about a prior incident of domestic violence; and (2)

24   _____

25   [1]   Previously named as respondent was "The People of the State of California."  The court now
     substitutes in the correct respondent, Melissa Lea, Chief Deputy Warden of the California Out-of-
26   State Correctional Facility Unit where petitioner is presently incarcerated.  See Stanley v.
     California Supreme Court, 21 F.3d 359, 360 (9th Cir.1994) ("A petitioner for habeas corpus relief
27   must name the state officer having custody of him or her as the respondent to the petition." )
     (citing Rule 2(a), 28 U.S.C. foll. § 2254); see also Smith v. Idaho, 392 F.3d 350, 355-56 (9th Cir.
28   2004).

                                             1

1  the trial court violated petitioner's federal constitutional rights in denying his motion for

2  substitute counsel.  Upon careful consideration of the record and the applicable law, the

3  undersigned will recommend that petitioner's application for habeas corpus relief be denied.

4  **I. Background**

5          In its unpublished memorandum and opinion affirming petitioner's judgment of

6  conviction on appeal,[2] the California Court of Appeal for the Third Appellate District provided

7  the following factual summary:

> The defendant beat up his live-in girlfriend.  Convicted by jury of
> assault by means of force likely to produce great bodily injury and
> sentenced to 11 years in state prison, the defendant appeals.  He
> contends the trial court erred by (1) admitting evidence of his prior
> domestic violence and (2) denying his motion to replace his
> appointed counsel.  Neither contention has merit, so we affirm.
>
> FACTS
>
> The defendant's contentions on appeal require only a brief
> recitation of the facts.
>
> In April 2010, the defendant lived with his girlfriend, Julie.  He
> found underwear in the bathroom, and Julie denied that it was hers.
> She said it belonged to her friend Amber.  They argued, with the
> defendant accusing Julie of lying about the underwear.
>
> Later the same day, Amber came to the apartment, and Julie told
> her to claim her underwear.  Amber refused, and they fought
> physically.  Believing the police were coming, Julie and the
> defendant left the apartment.
>
> Several hours later, Julie and the defendant returned to the
> apartment and again argued.  The defendant hit Julie in the face and
> head numerous times, breaking and bloodying her nose, splitting
> her lip, and knocking teeth loose.
>
> Julie called 911.  Stockton Police officers arrived and found Julie
> bleeding from her nose and mouth, with several teeth knocked loose
> or out.  The defendant was not there.  Julie told an officer that the
> defendant had caused her injuries.  However, later, on the
> defendant's urging, Julie went to the police department and said
> that she sustained her injuries in the fight with Amber.
>
> After the assault, Julie allowed the defendant to live with her until
> he was arrested about a month later.

---

2   ECF No. 14 at 26-37 (hereinafter Opinion).

The defense was that Julie's injuries were sustained in the fight with Amber.

PROCEDURE

The district attorney charged the defendant by information with assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))3 with an enhancement for great bodily injury involving domestic violence (§ 12022.7, subd. (e)). The information also charged the defendant with being a felon in possession of a firearm (§ 12021, subd. (a)(1)) and possession of methamphetamine for sale ( Health & Saf. Code, § 11378). The information alleged that the defendant had a prior serious felony (§ 667, subd. (a)) and three prior prison terms (667.5, subd. (b)).

A jury convicted the defendant of assault by force likely to produce great bodily injury. However, the jury found the great bodily injury enhancement not true, and acquitted the defendant on the firearm and methamphetamine possession counts. The trial court found the prior serious felony and prior prison term allegations true.

The court sentenced the defendant to four years in state prison for the assault, doubled to eight years under the "Three Strikes" law. The court also imposed consecutive one-year sentences for the three prior prison terms. The total state prison term imposed was 11 years.

(Opinion at 26-28.)

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court.  (Petition for Review, lodged October 12, 2012 (ECF. No. 17). )  The Supreme Court summarily denied that petition.  (Order denying Petition for Review, lodged October 12, 2012(ECF. No. 17). )

## II.  Analysis

### A.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

/////

_____

3   Hereafter, unspecified code citations are to the Penal Code.

1  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir.

2  2000).

3        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

4  corpus relief:

5            An application for a writ of habeas corpus on behalf of a
         person in custody pursuant to the judgment of a State court shall not
6        be granted with respect to any claim that was adjudicated on the
         merits in State court proceedings unless the adjudication of the
7        claim -

8            (1) resulted in a decision that was contrary to, or involved
         an unreasonable application of, clearly established Federal law, as
9        determined by the Supreme Court of the United States; or

10           (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
11       State court proceeding.

12

13       For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

14  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

15  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, ___ U.S.

16  ___, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams

17  v. Taylor, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive

18  in determining what law is clearly established and whether a state court applied that law

19  unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir.

20  2010)).

21       A state court decision is "contrary to" clearly established federal law if it applies a rule

22  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

23  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

24  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

25  writ if the state court identifies the correct governing legal principle from the Supreme Court's

26  /////

27  /////

28  /////

4

1    Decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] Lockyer v.

2    Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

3    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

4    court concludes in its independent judgment that the relevant state-court decision applied clearly

5    established federal law erroneously or incorrectly.  Rather, that application must also be

6    unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

7    (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

8    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

9    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

10   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

11   Richter, 562 U.S.___, ___, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541

12   U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

13   court, a state prisoner must show that the state court's ruling on the claim being presented in

14   federal court was so lacking in justification that there was an error well understood and

15   comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131

16   S. Ct. at 786-87.

17          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

19   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

20   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

21   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

22   de novo the constitutional issues raised.").

23          The court looks to the last reasoned state court decision as the basis for the state court

24   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

25   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26   _____

27   [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1  previous state court decision, this court may consider both decisions to ascertain the reasoning of

2  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

3  federal claim has been presented to a state court and the state court has denied relief, it may be

4  presumed that the state court adjudicated the claim on the merits in the absence of any indication

5  or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-85.  This

6  presumption may be overcome by a showing "there is reason to think some other explanation for

7  the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

8  803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

9  but does not expressly address a federal claim, a federal habeas court must presume, subject to

10  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

11  ___, 133 S. Ct. 1088, 1091 (2013).

12      Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to determine

14  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

15  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

16  review of the constitutional issue, but rather, the only method by which we can determine whether

17  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19  reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

20      When it is clear, however, that a state court has not reached the merits of a petitioner's

21  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

22  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

23  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

24      **B. Petitioner's Claims**

25          **1. Erroneous Admission of Evidence**

26      Petitioner's first ground for federal habeas relief is that the trial court violated his right to

27  due process in admitting evidence at his trial of his engagement in a prior act of domestic

28  violence.  He argues that this evidence was highly prejudicial and violated his right to a fair trial,

6

especially in this case where, according to petitioner, the victim's credibility was damaged when she "admitted to perjury under oath on the witness stand."  (Pet. (ECF No. 1) at 4; Traverse (ECF No. 16) at 1.)   The California Court of Appeal rejected petitioner's argument that his right to due process was violated by the admission of this evidence, reasoning as follows:

> **Evidence of Prior Domestic Violence**
>
> The defendant contends that the trial court abused its discretion and violated his due process rights by admitting evidence of his prior domestic violence under Evidence Code section 1109, which allows admission of evidence of prior domestic violence to show a propensity for such violence.  We conclude that there was no abuse of discretion and no constitutional problem.[5]
>
> **Background**
>
> Before trial, the prosecution filed a motion seeking to use evidence of the defendant's prior domestic violence committed on December 11, 2003, as well as the fact of the defendant's 2004 felony criminal threats (§ 422) conviction for that incident.  The defendant opposed the motion.
>
> In the prosecution's trial brief, the prosecutor provided a brief summary of the domestic violence incident and a copy of a police report.  Those sources revealed that defendant had been dating Deborah Howell for four years.  When they had an argument and broke up, the defendant went to the home of Natasha Howell, Deborah's cousin, looking for Deborah.  Deborah hid in a closet when she heard that the defendant was there.  Reaching under his jacket as if he had a gun, the defendant said he was going to "pop" or kill Deborah.  The defendant left the home when he was told the police were coming, but he telephoned to say that he would come back and smother the whole family if they told the police his name.
>
> During a pretrial hearing, the court and counsel first discussed whether the prosecutor would be able to use the prior criminal threats conviction to impeach the defendant.   Defense counsel argued that allowing evidence of the conviction would add to the prejudicial effect of the evidence of the domestic violence.   The trial court stated that the probative value of the conviction outweighed the prejudicial effect and allowed evidence of the conviction as impeachment.
>
> After considering the evidence, the trial court reversed its decision concerning evidence of the conviction because it was not clear that the victim of the criminal threats was Deborah, but instead was her

---

[5]   The defendant also argues that he was denied effective assistance of counsel because of counsel's possible failure to make the objection, based on Evidence Code section 352 and due process, more clearly.  We need not consider this argument because the trial court properly admitted the evidence in any event.

cousin Natasha.  Concluding that the incident constituted domestic violence for the purpose of applying Evidence Code section 1109, the court considered whether it should be excluded pursuant to Evidence Code section 352.  The court found that the incident was not "unduly old," was probative, and was not unduly prejudicial.  It therefore granted the prosecution's motion to admit the evidence under Evidence Code section 1109.[6]

**Applicable Law**

Evidence Code section 1109, subdivision (a)(1) provides in relevant part:  "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

The defendant contends the prior domestic abuse evidence should have been excluded because it was inflammatory and prejudicial.  He relies in part on Evidence Code section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The "prejudice" referred to by Evidence Code section 352 does not refer to damage "'that naturally flows from relevant, highly probative evidence'"  (People v. Zapien (1993) 4 Cal.4th 929, 958), but instead to "evidence that poses an intolerable risk to the fairness of the proceedings or reliability of the outcome."  (People v. Booker (2011) 51 Cal.4th 141, 188.)  Evidence Code section 352 gives the trial court discretion to weigh possible prejudice against the probative value of evidence.   "The admissibility of evidence of domestic violence is subject to the sound discretion of the trial court, which will not be disturbed on appeal absent a showing of an abuse of discretion.  [Citations.]"   (People v. Poplar (1999) 70 Cal.App.4th 1129, 1138.)

"Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)."  (People v. Rucker (2005) 126 Cal.App.4th 1107, 1119.)

Highly probative evidence, though damaging to the defendant, does not violate due process.  (People v. Kelly (2007) 42 Cal.4th 763, 787.)

---

[6]   The defendant attempts to use the trial testimony of Deborah and Natasha Howell to establish the facts relevant to this contention.  However, we consider only the evidence before the court when the motion was granted.  (People v. Tolliver (2008) 160 Cal. App.4th 1231, 1237, fn. 9.)

8

**Analysis**

The defendant asserts that the trial court abused its discretion by admitting the prior domestic violence evidence because it was too inflammatory.   To the contrary, although the prior incident concerned serious threats, the level of actual violence was far greater in the instant offense.   Accordingly, it was not too inflammatory.

The evidence of the prior domestic violence was probative because it established the defendant's propensity for domestic violence. Accordingly, the trial court did not abuse its discretion in admitting the evidence.

As for the defendant's contention that his federal due process rights were violated, we see no merit.   The evidence was probative and not unduly prejudicial.   Therefore, admission of the evidence did not violate the defendant's federal due process rights.   (People v. Kelly, supra, 42 Cal.4th at p. 787.)

The defendant's contentions concerning the prior domestic violence evidence are without merit.

(Opinion at 28-33.)

A federal writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). Evidence must "be of such quality as necessarily prevents a fair trial" for its admission to violate due process  Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).

Notwithstanding the above, the Ninth Circuit has observed that:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

9

1    the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

2    laid out by the Supreme Court."  Id.  Pursuant to these binding authorities, the state appellate

3    court's rejection of petitioner's due process claim here does not support the granting of federal

4    habeas relief under AEDPA because a California trial court's admission of evidence pursuant to

5    California Evidence Code § 1109 to show propensity does not violate any principle of clearly

6    established federal law.  Id.

7           In addition, the United States Supreme Court "has never expressly held that it violates due

8    process to admit other crimes evidence for the purpose of showing conduct in conformity

9    therewith, or that it violates due process to admit other crimes evidence for other purposes

10   without an instruction limiting the jury's consideration of the evidence to such purposes."

11   Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by

12   Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open

13   this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,

14   we express no opinion on whether a state law would violate the Due Process Clause if it permitted

15   the use of 'prior crimes' evidence to show propensity to commit a charged crime"); see also

16   Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that the state court's determination,

17   that the propensity evidence introduced against the defendant at trial did not violate his right to

18   due process, was not objectively unreasonable); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th

19   Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence violated his

20   due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not

21   been clearly established by the Supreme Court, as required by AEDPA"); see also United States

22   v. LeMay, 260 F.3d 1018, 1024-27 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of

23   evidence of similar crimes in child molestation cases, under which the test for balancing probative

24   value and prejudicial effect remains applicable, does not violate the due process clause).

25   Accordingly, the state court's rejection of petitioner's contention that the admission of the

26   challenged evidence violated his right to due process is not contrary to clearly established federal

27   law.  See 28 U.S.C. § 2254(d).

28   /////

1    Further, any error in admitting this challenged evidence did not have "a substantial and

2    injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.

3    619, 637 (1993).  See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).  The record reflects

4    that the state trial judge struck an appropriate balance between petitioner's rights and the clear

5    intent of the California legislature that evidence of prior similar acts be admitted in domestic

6    violence prosecutions.  The trial court held a hearing on the admissibility of petitioner's prior acts

7    of domestic violence and concluded that the challenged evidence was relevant and that its

8    admission was appropriate under California law.  The trial court specifically concluded that the

9    evidence was not unduly prejudicial and therefore that exclusion of it pursuant to California

10   Evidence Code § 352 was not required.  (Reporter's Transcript on Appeal (RT) at 17.)

11   In addition, the jury at petitioner's trial was instructed at the close of the evidence that if

12   they found petitioner had committed the uncharged act of domestic violence they could, but were

13   not required to, infer that he had a disposition to engage in domestic violence.  (Clerk's Transcript

14   on Appeal (CT) at 284.)  The jury was also instructed that if they found that petitioner had such a

15   disposition, they could, but were not required to, infer that he was likely to have committed the

16   charged offenses.  (Id.)  These instructions did not compel the jury to draw an inference of

17   propensity; they simply allowed it.  Finally, the jury was directed that it should not consider

18   petitioner's prior conduct, or evidence thereof, as proof that petitioner committed the crimes

19   charged in the information.  (Id.)  In addition, the jury instructions, viewed in their entirety,

20   correctly informed petitioner's jury that the prosecution had the burden of proving all elements of

21   the crimes against petitioner beyond a reasonable doubt.  (See e.g., id. at 266, 269.)  Although the

22   prior crimes evidence was potentially powerful, "[the fact] that prior acts evidence is

23   inflammatory is not dispositive in and of itself."  LeMay, 260 F.3d at 1030.  In any event, as

24   noted by the California Court of Appeal, the prior acts evidence admitted into evidence at

25   petitioner's trial was not nearly as inflammatory as the allegations against petitioner involving the

26   victim in this case.

27   /////

28   /////

11

Accordingly, for all of these reasons, petitioner is not entitled to federal habeas relief with respect to his due process claim based upon the alleged improper admission of evidence regarding his prior domestic violence incident.[7]

### 2. Denial of Motion for Substitute Counsel

In his second claim for relief, petitioner argues that the trial court violated his Sixth Amendment rights when it denied his motion for substitute counsel (i.e. <u>Marsden</u> motion).  (Pet. at 4.)  Petitioner contends that he was entitled to new counsel because his trial attorney failed to convey to him the terms of a pretrial plea offer.  (<u>Id.</u>)  The California Court of Appeal rejected this claim as well, reasoning as follows:

> **Motion to Replace Appointed Counsel**
>
> During trial, the defendant made a <u>Marsden</u> motion to replace his appointed counsel.[8]  He claimed that there was a breakdown in the attorney-client relationship because defense counsel failed to tell him about a plea offer.  The trial court denied the motion.  On appeal, the defendant renews his argument.  We find there was no abuse of discretion in denying the <u>Marsden</u> motion.
>
> **Applicable Law**
>
> """"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.""  [Citation.]  The decision whether to grant a requested substitution is

---

[7]   On appeal in state court, petitioner argued that his trial counsel rendered ineffective assistance in failing to object to the admission of the evidence relating to his prior act of domestic violence on federal due process grounds and on the grounds that the evidence was inadmissible under California Evidence Code § 352.  (Appellant's Opening Brief, Lodged Oct. 12, 2012, at 14-15.)  Petitioner does not raise that claim in his petition before this court.  However, even if he had raised such a claim, it would lack merit.  Because any error by the trial court in admitting evidence of petitioner's prior conduct was harmless, petitioner could not demonstrate that he suffered prejudice from counsel's deficient performance.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984) (to support a claim of ineffective assistance of counsel, a petitioner must show deficient performance and prejudice, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

[8]   <u>People v. Marsden</u> (1970) 2 Cal.3d 118 (<u>Marsden</u>).

within the discretion of the trial court; appellate courts will not find an abuse of that discretion unless the failure to remove appointed counsel and appoint replacement counsel would 'substantially impair' the defendant's right to effective assistance of counsel. [Citation.]"   (People v. Roldan (2005) 35 Cal.4th 646, 681, overruled on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.)

**Background**

The trial court held a hearing on the defendant's Marsden motion. Defendant stated that "there was a deal on the table and my lawyer never told me about the deal after arraignment in superior court . . . ."  He also complained about other matters, such as cross-examination of witnesses, but he does not pursue those complaints on appeal.

The trial court questioned the defendant, defense counsel, and the prosecutor about the plea deal.  The prosecution offered the defendant a four-year deal before the preliminary hearing. The deal was communicated to the defendant, and he rejected it.  The defendant and defense counsel disagreed about whether the four-year deal was available after the preliminary hearing.  Defense counsel recalled that it was withdrawn after the preliminary hearing, but the defendant insisted that it was still on the table.

The trial court summoned the prosecutor to respond to questions about the offer.  She stated a four-year offer was made before the preliminary hearing, which the defendant rejected.  The prosecutor believed that she had left the offer open at the pretrial conference, but that she withdrew it when trial started.  Defense counsel, however, reminded the prosecutor that she (the prosecutor) was not present for the pretrial conference and that the prosecution did not supply a pretrial conference statement to the defense.  The prosecutor concluded:  "Well, Your Honor, it looks like as though I may not have filed a pre-trial conference statement.  So, at best, what I did was let [defense counsel] know – at best, let her know that the four-year offer was available before trial.  But the conversations that I had were that the defendant was not interested in pleading to anything at all, period, end of sentence.  And we had that discussion just about every court date that we have been together.  So I haven't continued to extend offers because there is no reason to."

The defendant stated, in response to questioning from the court, that he never said that he wanted to plead guilty.  Finally, defense counsel said that the defendant had "always expressed to me he was not going to accept any offer."

The trial court found that defense counsel was providing competent representation and that there was no breakdown in the attorney-client relationship, so it denied the Marsden motion.

/////

13

**Analysis**

On appeal, the defendant contends that trial counsel violated the professional obligation to inform him of the offer.  There are several problems with this contention.

First and foremost, contrary to the defendant's assertions, it is not at all clear that defense counsel knew that the prosecutor intended to leave open the four-year offer after the preliminary hearing.  It appears that the prosecutor intended to do that, but defense counsel apparently did not know that the prosecutor intended to leave the offer open.  Therefore, factually, the defendant's contention that trial counsel violated a professional obligation to inform him of the offer is unsupported.

Second, the defendant, during the <u>Marsden</u> hearing, claimed to know that the prosecution's offer was still on the table after the preliminary hearing.  However, he rejected the offer before the preliminary hearing and there is no evidence he tried to accept the offer, which he claimed to know was still on the table, after the preliminary hearing.

And third, before trial, the defendant proclaimed his intent not to accept any offer.  That he may have changed his mind during trial is of no moment because the four-year offer had been withdrawn.

Since (1) the violation of the professional obligation is the basis for the defendant's argument that the trial court abused its discretion in denying the <u>Marsden</u> motion and (2) the defendant has failed to establish this premise, the defendant's contention that the trial court abused its discretion is without merit.

(Opinion at 33-37.)

Pursuant to the decision in <u>People v. Marsden</u>, 2 Cal. 3rd 118 (1970), when a criminal defendant in California asserting inadequate representation seeks to discharge appointed counsel and substitute another attorney, the trial court must permit him to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  The denial of a <u>Marsden</u> motion to substitute counsel can implicate a criminal defendant's Sixth Amendment right to counsel and is properly considered in federal habeas corpus.  <u>Bland v. California Dep't of Corrections</u>, 20 F.3d 1469, 1475 (9th Cir. 1994), <u>overruled on other grounds</u> by <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc).  On federal habeas review, the relevant inquiry is whether the state trial court's disposition of the <u>Marsden</u> motion violated petitioner's right to counsel because the asserted conflict "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client

14

1    relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1027-

2    28.  The Sixth Amendment guarantees effective assistance of counsel, but not a "meaningful

3    relationship" between an accused and his counsel.  Morris v. Slappy, 461 U.S. 1, 14 (1983).

4         The United States Supreme Court has not specifically addressed the level of inquiry

5    required when a Marsden motion or other similar motion is made by a criminal defendant.  When

6    assessing a trial court's ruling on a Marsden motion in the context of a federal habeas corpus

7    proceeding, the Ninth Circuit has held that the Sixth Amendment requires only "an appropriate

8    inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the

9    case goes forward."  Schell, 218 F.3d at 1025.  See also Plumlee v. Masto, 512 F.3d 1204, 1211

10   (9th Cir. 2008) ("Under our precedents, see, e.g., Schell, 218 F.3d at 1025-26, Judge Lane had a

11   duty to inquire into the problems with counsel when they were first raised, and he did so").

12        Here, the trial judge gave petitioner a full opportunity to explain his reasons for wanting to

13   substitute another attorney for his appointed trial counsel.  The trial judge also questioned both

14   trial counsel and the prosecutor in order to determine the relevant facts.  After hearing from all

15   parties, the judge determined that petitioner's trial counsel was providing competent

16   representation, and that any disagreement or misunderstanding between petitioner and his counsel

17   about whether the plea offer remained available after the preliminary hearing had not resulted in a

18   complete breakdown of the attorney-client relationship or an inability to present a defense at trial.

19   This latter conclusion was later borne out by the fact that defense counsel was able to mount a

20   competent defense, with petitioner being called as one of the defense trial witnesses.

21        The factual record was sufficient to allow the trial court to make an informed decision that

22   petitioner's complaints did not require substitute counsel. [9]  See Stenson v. Lambert, 504 F.3d

23   873, 887 (9th Cir. 2007) (inquiry was adequate when court determined that the lines of

24   _____

25   [9]   The record before this court does not include the transcript of petitioner's Marsden hearing.
     (See RT at 234-48 (pages excluded from the record).)  Petitioner did not include the transcript of
26   the Marsden hearing in the documents he filed with this court.  However, the California Court of
     Appeal explained the relevant facts in its opinion affirming the judgment of conviction, to which
27   neither party has objected.  Therefore, the transcript of that proceeding is not necessary to this
     court's resolution of the matter.

28

1    communication were open and counsel was competent); United States v. Prime, 431 F.3d 1147,

2    1155 (9th Cir. 2005) (inquiry was adequate where defendant 'was given the opportunity to

3    express whatever concerns he had, and the court inquired as to [defense attorney's] commitment

4    to the case and his perspective on the degree of communication."); cf. Schell, 218 F.3d at 1027

5    (remanding for an evidentiary hearing where the state court failed to make any inquiry into

6    alleged deterioration of attorney-client relationship and the substance of the petitioner's claims).

7    Here, the trial court having inquired into counsel's representation and satisfied itself that

8    representation was adequate, did not violate petitioner's Sixth Amendment rights in denying his

9    Marsden motion.[10]

10   **III. Conclusion**

11           Accordingly, for the reasons set forth above IT IS HEREBY RECOMMENDED that

12   petitioner's application for a writ of habeas corpus be denied.

13           These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within fourteen days after service of the objections.  Failure to file

19   objections within the specified time may waive the right to appeal the District Court's order.

20   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

21   1991).  In his objections petitioner may address whether a certificate of appealability should issue

22

23   [10]   Petitioner has not raised a freestanding claim that his trial counsel rendered ineffective
     assistance in failing to convey a plea offer to him, nor did he raise such a claim in state court.

24   Rather, petitioner's allegation that his trial counsel failed to inform him that the plea offer
     remained open is limited only to forming the basis of petitioner's claim that the trial court

25   improperly denied his Marsden motion.  Even assuming arguendo that petitioner did raise a claim
     of ineffective assistance of counsel, it would lack merit.  Petitioner has failed to demonstrate that

26   his trial counsel knew the plea offer remained available after his preliminary hearing or that
     petitioner would have accepted that offer if its continued availability was conveyed to him.

27   Accordingly, he has failed to show either deficient performance or prejudice and is therefore not

28   entitled to federal habeas relief.  See Strickland, 466 U.S. at 694.

16

in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  August 9, 2013

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
Drake1499.hc

17